JOHN G. GREENE AND ABRAM G. VEEDER, COMPRISING THE FIRM OF GREENE & VEEDER, RESPONDENTS, *v.* ANTHONY WALTON, RUGENE M. OLMSTEAD, GEORGE BUSKERK, CALVIN L. BRANDOW AND ALBERT SHEAR, APPELLANTS.

*Insurance — liability of the directors of the company, under chapter 267 of 1875, although the policy provides that they shall not be liable.*

A corporation, organized under chapter 267 of the Laws of 1875, the eighth section of which provided, "The directors * * * shall be jointly or severally liable for all debts due from said society or corporation contracted while they are trustees," issued a certificate of insurance by which it insured the life of a certain bay horse. The certificate provided that the company would pay the owner of the horse the proceeds of an assessment of one per cent, not to exceed $100 ; and further provided: "As this society is purely mutual the payment of assessments is not obligatory, but is the voluntary contribution of its members:" and, further, that "the directors of this society, either individually or as a body, shall not assume any liabilities personally by reason of the issuance of this certificate."

In an action brought by the owners of the horse thus insured against the directors. to recover the amount of the insurance:

*Held,* that the provision of the policy, relating to the immunity of such directors from personal liability, was repugnant to the provision of the statute and was void upon grounds of public policy. (LEARNED, P. J., dissenting.)

That the statute formed part of the charter of the corporation, which could make no contract forbidden thereby.

That this provision of the contract was not for the benefit of the corporation, but of its directors, for whom the corporation had no power to make contracts.

That the directors, who were such at the time of the issuance of the certificate of insurance, were liable, under the provisions of the act of 1875, for the obligation created thereby,

*Quære,* whether the directors could, by direct contract with the insured, protect themselves from personal liability.

APPEAL by each of the several defendants from a judgment of the County Court of Schenectady county, entered in the office of the clerk of the county of Schenectady on the 2d day of July, 1889, affirming the judgment of a justice of the peace of the city of Schenectady, in favor of the plaintiffs.

The action was brought by the plaintiffs against the defendants, as directors of the National Stock Owners' Mutual Benefit and Indemnity Society, to recover upon a certificate of insurance issued by said society, containing the following, among other provisions :

"Therefore, the said 'National Stock Owners' Mutual Benefit and Indemnity Society' agrees that upon receiving satisfactory proof of the death of the said described horse by death, other than by willful neglect, between February 3, 1888, and February 3, 1889, at noon, to pay to said Greene & Veeder, his heirs or assigns, the net proceeds of an assessment of one per cent to be levied upon all, as members of Class A, not to exceed the sum of one hundred dollars, to be assessed for, according to the constitution and by-laws, within sixty days after said proof of death having been filed with the secretary and approved and accepted by this society, providing, however, that the said death occurs while the said Greene & Veeder is a member of this society, and is not in arrears for any dues or assessments made upon him at the time of said death, or that this certificate has not been previously canceled, and also provided the said member conforms to the following conditions and agreements :    *    *    *

"*Second.* An assessment of not more than one per cent upon the benefit asked by each member will be made when it shall be necessary to raise funds to pay losses, and for no other purpose.    As this society is purely mutual the payment of assessments is not obligatory, but is the voluntary contributions of its members.    *    *    *

"*Fifth.* That the holder of this certificate agrees that a failure on his or her part to pay any assessment required by the constitution and by-laws forfeits all rights which he or she may have acquired as a holder of this certificate; and also agrees that the society may cancel this certificate and retain any and all moneys that may have been paid to them thereon.    *    *    *

"*Twelfth.* It is distinctly understood and agreed that the directors of this society, either individually or as a body, shall not assume any liabilities, personally, by reason of the issuance of this certificate."

*Edward D. Cutler* and *A. P. Strong*, for the appellants.

*Edwin C. Angle*, for the respondents.

LANDON, J. :

The policy provides that "the directors of this society, either individually or as a body, shall not assume any liabilities personally by reason of the *issuance* of this certificate."

The statute (Laws of 1875, § 8, chap. 267) provides that "the directors  *  *  *  shall be jointly or severally liable for all debts due from said society or corporation, contracted while they are trustees," etc.

The provision of the policy is repugnant to the provision of the statute, and is void upon grounds of public policy. The statute forms part of the charter of the corporation and the corporation can make no contract which its charter forbids. *(Abbott* v. *Johnstown H. R. Co.*, 80 N. Y., 27.)

The corporation has power to make contracts for itself in aid of its business, but it has no power to make contracts in behalf of its directors. Presumably the directors are competent to make their own contracts. This contract is not for the benefit of the corporation, and it is not a contract between the plaintiffs and the defendants ; nor is it one like *Lawrence* v. *Fox* (20 N. Y., 268), in which the benefit which one party might secure to himself he can secure to another ; for the corporation could not secure a like benefit for itself. Sound public policy requires that a corporation shall make no contract nullifying, as to its directors, the provisions of the organic act as to their personal liability. Otherwise a corporation might do business, not under the conditions prescribed by the statute to secure upright dealing, but under opposite conditions, and thus put at naught the wholesome restraints imposed by the sovereign power.

It is not necessary to decide that the directors could not by direct contract with the plaintiffs protect themselves from personal liability. This contract was made while the defendants were trustees, and although it did not mature until after their successors were appointed, yet when it did mature it was the debt which was contracted while defendants were trustees. The policy promised payment to plaintiffs of "the net proceeds of an assessment of one per cent to be levied upon all, as members of class A, not to exceed the sum of $100, to be assessed for according to the constitution and by-laws." No such "net proceeds of an assessment" have been paid. The reasonable construction of the policy is that such an assessment would produce something.

The provision in the policy, "As this society is purely mutual the payment of assessments is not obligatory, but is the voluntary con-

tributions of its members," was not strictly true. Every policy-holder had to pay his assessment or forfeit his policy. Such a penalty for non-payment might prove adequate to procure payment. The plaintiffs were entitled to recover something. It appears that an assessment was made; if there is any error, it is that it was not shown that the net proceeds of the assessment amounted to $100. Whether that error affects the merits we do not know; and we ought not, in order to promote the success of a scheme of insurance like this, to be astute in inquiring, and hence, under the rule applicable to appeals from Justices' Courts, we may affirm the judgment. (Code Civil Pro., § 3063.)

MAYHAM, J., concurred.

LEARNED, P. J. (dissenting):

This is an appeal from a judgment of the County Court affirming a judgment recovered by the plaintiffs before a justice of the peace.

The action is brought against the defendants as directors or managers of the "National Stock Owners' Mutual Benefit and Indemnity Society," upon a certain certificate or *guaranty* policy of insurance issued to plaintiffs by said society, by which it insured the life of a certain bay horse, "Tom," belonging to plaintiffs.

The agreement of the certificate is to pay plaintiffs the proceeds of an assessment of one per cent to be levied on all as members of Class A, not to exceed $100.

One of the provisions of the certificate is as follows: "As this society is purely mutual, the payment of assessments is not obligatory, but is the voluntary contributions of its members." Another is, that the society agrees to deposit in the post-office a notice of the assessment directed to each certificate-holder, etc.

The last provision is: "It is distinctly understood that the directors of this society, either individually or as a body, shall not assume any liabilities personally by reason of the issuance of this certificate." The society was incorporated under chapter 267, Laws of 1875, and the alleged liability is under section 8.

The first question arises on the provision last cited, declaring that the directors shall not assume any personal liability by reason of the certificate. I see no reason to doubt the validity of that provision.

It was competent for the plaintiffs, themselves members of this mutual society, to make such agreement as they pleased and to waive any right given to them by the statute. (*Phyfe* v. *Eimer*, 45 N. Y., 102.)

This is not a question as to the validity or invalidity of by-laws. It is simply a question whether a person may not waive a right which is given him by statute. The liability imposed on directors by the statute is for the benefit solely of persons contracting with the company. No rule of public policy is violated when such persons waive this liability. The plaintiffs could release the defendants from liability after the death of the horse. We see no reason why they might not before.

The case of *Richardson* v. *Thurber* (104 N. Y., 606) has no application. That simply decided that the neglect in an assignment to provide for the statutory preference to employees did not make the assignment void, but that the statute qualified the assignment. It is not suggested that an employee could never voluntarily release his right to a preference.

But it is said by plaintiffs that it was the duty of the society to make an assessment, and that the defendants are liable, under section 8, because this was not done. Passing the previous objection (which applies to this agreement also) I may notice that the alleged liability under section 8 is for " debts," payable one year from the time they shall have been contracted. These words do not include the obligation o the society to make an assessment. That is a duty, not a debt. It is not a thing payable, but a thing to be performed. The complaint does not charge defendants with neglecting to perform the duty of making an assessment, but with the failure to pay a debt of the society arising on the certificate of insurance and the death of the horse.

As a matter of fact, it is testified that there was an assessment in March, 1885, after proof of the loss of the horse; though the plaintiffs do not remember receiving notice thereof. Further, if the defendants neglected their duty in making this assessment, it does not appear that any damage was caused; for it is especially provided in the certificate of insurance that " the payment of assessments is not obligatory, but is the voluntary contributions of its members." It is impossible to infer, therefore, that the plaintiffs have suffered

any loss. They themselves can request the members to contribute to compensate plaintiffs for their loss. The assessment, if made, would be nothing more than what they can do. By the terms of the certificate the assessment imposed no legal duty on the members. The truth is that the parties to the certificate seem to have intended that no one should be liable for anything; and they have succeeded, except as to the cost of litigation.

There are many other matters discussed at length, and with ability, by the counsel on each side. But it seems to us unnecessary, in the view we have taken, to express any opinion on such matters.

I think the judgments of the County Court and of the justice of the peace should be reversed, with costs against plaintiffs.

Judgment affirmed, with costs.